**NOT FOR PUBLICATION**

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JSHIK JANG, | |
| Petitioner, | Civil Action No. 10-2471(MLC) |
| v. | **MEMORANDUM OPINION** |
| MICHELLE RICCI, | |
| Respondent. | |

**COOPER, District Judge**

Petitioner, Jshik Jang, a prisoner confined at New Jersey State Prison, submits a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is Michelle Ricci. For the reasons stated herein, the Petition will be denied.

### I.  BACKGROUND

**A.  Factual Background**

The relevant facts are set forth in the opinion of the New Jersey Appellate Division.[1]

> In the late evening of January 4, 1995, defendant went to the home of Michael Suh with Jin Sig Choi and another individual identified only as "Mr. Lee" for the purpose of "get[ting] some money" from Suh, a successful businessman known to possess large sums of cash. When Suh pulled into his garage at approximately 11:30 p.m., he was confronted by a man wearing a ski mask and standing next to Suh's wife's car. In an effort to warn his wife, who with her mother and

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

two children was in the home, Suh sounded his horn. Suh, through his review-view mirror, then observed another masked individual walking towards the driver's window. This second masked man aimed a gun at Suh and pulled the trigger twice, but the gun did not fire. Suh shifted his car into reverse, striking the garage door, and proceeded back down the driveway; the gunman followed him. Mrs. Suh entered the garage from the house and was tackled by the other masked man, who then stabbed her eleven times, killing her.

None of the perpetrators were apprehended at the scene, but investigators recovered the gun used in the robbery near the Suh home. The bloody knife used to stab Mrs. Suh was recovered nearby as well.

Defendant was implicated in the crime as a result of a trace of the serial number on the recovered gun that revealed a chain of sales eventually ending with a sale of the weapon to Choi and the defendant. When the police also determined that Choi owned a white and silver Chevrolet Blazer, the vehicle observed at the scene of the murder, they contacted the television show "America's Most Wanted" to conduct a profile of the case. The airing of that show resulted in a call from Tacoma, Washington advising of defendant's presence there, and eventually led to the surrender of defendant in Missoula, Montana.

Detective Sergeant Richard Cary of the Paramus Police Department, Detective Mark Bendul and Lieutenant Joseph Hornyak of the Bergen County Prosecutor's Office traveled to Tacoma, Washington and then to Montana where they interviewed defendant with U.S. Immigration and Naturalization Service (INS) Special Agent Jake Stavlo in the Jefferson County Jail in Boulder, Montana. The INS's involvement was prompted by the issuance of a complaint and arrest warrant charging defendant as an illegal alien in possession of a firearm. Prior to this interview, defendant was informed that the South Korean Consulate would be advised of his arrest and custody the next day, and Special Agent Stavlo did contact the South Korean Consulate the following day. Defendant was also advised of his Miranda rights in both English and Korean. He read the Miranda card in Korean, wrote "yes" next to each of the Miranda rights, and signed his name in English in the waiver portion of the Miranda form. Special Agent Stavlo questioned defendant in English, and Detective Bendul, a Korean by birth, interpreted the questions into Korean.

Defendant minimalized his involvement in the murder. He admitted that he bought the gun as well as the knife used to kill Mrs. Suh, and had purchased and placed in Choi's

2

>Chevrolet Blazer the ski masks used in the burglary, but he claimed that he did not know about the burglary and stayed in the back seat of the vehicle the entire time as he had a "bad back." He denied driving the Chevrolet Blazer, and asserted that Choi operated the vehicle, as defendant remained in the back seat. Notably, defendant had no reply to the investigators' perhaps rhetorical question: "If you had a bad back and you couldn't participate in this attempted robbery, why would Choi and Lee even think of bringing you there?"
>
>Later in the morning of May 4, 1996, defendant was transported to the INS office in Helena, Montana to undergo processing for the federal immigration charge, and Special Agent Stavlo and Detective Bendul again met with defendant, informing him of his <u>Miranda</u> rights for a second time. Defendant subsequently made a formal statement while at the INS office, terminating the interview by stating: "I don't want to talk anymore. Take me to jail."[2]

**B.    Procedural History**

Petitioner was tried by a jury and found guilty of first-degree murder; first-degree attempted murder; first-degree armed robbery; two counts of first-degree felony murder; second-degree armed burglary; two counts of third-degree unlawful possession of a weapon; and second-degree unlawful possession of a weapon. Petitioner was sentenced on January 28, 2000 to an aggregate term of life in prison, including forty years of parole ineligibility.

Petitioner appealed from that sentence, which was affirmed by the New Jersey Appellate Division on March 28, 2003.[3] The New Jersey Supreme Court denied the petition for certification on

---

[2]<u>State v. Jshik Jang</u>, 359 N.J. Super 85, 88-90, 819 A.2d 9, 11-12 (N.J. App. Div. 2003).

[3]<u>State v. Jshik Jang</u>, 359 N.J. Super 85, 819 A.2d 9 (N.J. App. Div. 2003).

3

July 3, 2003.[4]  Petitioner then filed for post conviction relief (PCR).  The Petition for PCR was denied on October 27, 2007, that denial was affirmed by the Appellate Division on July 24, 2009,[5] and petition for certification was denied by the New Jersey Supreme Court on February 25, 2010.

## II.  28 U.S.C. § 2254

28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> As to any claim adjudicated on the merits in state court

proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the

---

[4]State v. Jshik Jang, 177 N.J. 492, 828 A.2d 919 (2003).

[5]State v. Jshik Jang, 2009 WL 2192580 (N.J. App. Div.).

state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.

5

Angelone, 528 U.S. 225, 237 (2000)).  As to claims presented to, but not adjudicated by, the state courts, however, a federal court may exercise independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if a petitioner has failed to exhaust remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969).

### III.  ANALYSIS

Petitioner asserts the following ground for relief:

Ground One: "Failure to comply with Vienna Convention violated equal-protection and due-process clauses, among other things."

Ground Two: "The prosecutor's summation constituted misconduct, depriving Petition of a fair trial and due process of law."

Ground Three: "Petitioner was deprived of his right to effective assistance of counsel."

Respondents contend that Petitioner did not fully exhaust a portion of his claims.  Even though Petitioner's claims may not have not been fully exhausted in the state courts, this Court finds the claims are meritless nonetheless.  Accordingly, pursuant to 28 U.S.C. § 2254(b)(2), this Court will exercise its discretion to deny these claims on the merits, rather than stay the proceeding or dismiss for failure to exhaust.

**A.   Vienna Convention**

Petitioner alleges that "[u]pon his arrest, Petitioner, an official South Korean national, was not advised of his right to speak with South Korean consular officers nor given an independent interpreter."

The Appellate Division on direct appeal rejected Petitioner's claims that the state did not comply with the Vienna Convention of Consular Relations ("VCCR").  The court referred to a three prong test as to prejudice associated with alleged violations of the VCCR: "To establish prejudice, defendant must produce evidence

7

that: 1) he did not know his right; 2) he would have availed himself of the right had he known of it; 3) there was a likelihood that contact with the consul would have resulted in assistance to him." State v. Jshik Jang, 359 N.J. Super. 85, 93 (citing State v. Cevallos-Bermeo, 333 N.J. Super. 181, 187 (N.J. App. Div. 2000) (adopting three-prong test set forth in United States v. Villa-Fabela, 882 F.2d 434, 440 (9th Cir.1989), overruled on other grounds, United States v. Proa-Tovar, 975 F.2d 592 (9th Cir. 1992)). The Jshik Jang Court stated that:

> Here, defendant satisfies the first prong of this test as he was not told that he could contact the consulate; Special Agent Stavlo informed the consulate himself. Defendant asserts that he would have contacted the consulate if so advised, thus satisfying prong two. As to prong three, he claims that if he had contacted the consulate, "he certainly would have been advised of the potential for consultation with a Korean-speaking attorney. Such advise [sic] from the consulate would reasonably have led defendant to request counsel and to decline to speak with the police until he consulted an attorney." We reject defendant's arguments. His generalized claim as to what may have happened if he had contacted the consulate is no different in degree from the "vague and general" allegations of prejudice that we rejected in Cevallos-Bermeo."
>
> [...]
>
> But there is a more defining distinction. No contact was made in Cevallos-Bermeo; however here, Agent Stavlo contacted the consulate, and yet, no Korean-speaking attorney or assistance was forthcoming.
>
> Also, defendant received his Miranda rights in both English and Korean, and he signed the Miranda card next to each statement of his rights. Defendant was interviewed by the police in Korean and had turned himself in to the police, wanting to tell his story. Defendant was cooperative and "eager for [the officers] to believe his story." In sum, we find no error here warranting our intervention; and absent

prejudice, we need not address the more expansive issues urged by defendant.[6]

This Court agrees with the Appellate Division and finds that no violation of the VCCR exists here. Petitioner is not entitled to relief on this ground.

## B. Prosecutorial Misconduct

Petitioner alleges that he was deprived of his constitutional right to a fair trial because of the prosecutor's remarks during the closing statement including stating that the victim had sacrificed her life to save her family, describing it as her "last act of heroism."

A prosecutor must conduct a criminal prosecution with propriety and fairness:

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935). "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone. Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the

---

[6]State v. Jshik Jang, 359 N.J. Super 85, 93-94 (N.J. App. Div. 2003).

9

defendant's guilt and offering unsolicited personal views on the evidence." United States v. Young, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. at 18.

Under United States Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

On direct appeal, the Appellate Division rejected Petitioner's claims of prosecutorial misconduct.

> During his summation, the prosecutor commented that Mrs. Suh had sacrificed her life to save her family by entering the garage, and referred to this act as her "last act of heroism." There was no objection, and the judge charged the jury prior to the trial and its deliberations that "[a]rguments, statements, remarks, openings and summations of the attorney are not evidence and should not be treated as evidence."
>
> The prosecutor's remarks were inappropriate and not supported by the record. Defendant correctly notes that they were made to generate sympathy for the victim and inflame the jury.
>
> [...]
>
> [W]e caution prosecutors that they risk reversal and other sanctions by such conduct; nevertheless, we conclude that although the prosecutor's remarks were inappropriate, they were indeed "fleeting" and accompanied by an appropriate charge by the trial judge instructing, among other things, that counsel's comments are not evidence. We conclude that the remarks did not rise to the level of plain error.[7]

This Court agrees here with the Appellate Division that the prosecutor's behavior did not deprive Petitioner of a fair trial. While the prosecutor's statements may not have been appropriate, Petitioner was not denied due process and as such is not entitled to relief.

## C.   Ineffective Assistance of Counsel

Petitioner asserts claims that trial counsel was ineffective because counsel allegedly failed to "(a) provide Petitioner with pre-trial discovery, (b) properly object to the composition of

---

[7] State v. Jshik Jang, 359 N.J. Super 85, 819 A.2d 9 (N.J. App. Div. 2003).

the jury, (c) move to dismiss juror medication consumption, (d) properly object to the jury charge, and (e) to move for dismissal, acquittal, or vacation of conviction."

The Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of

an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

As to this issue, the Appellate Division noted that while the PCR judge "did not extensively address each claimed area of ineffective performance by trial counsel, the court concluded that defendant failed to present the requisite proofs to support [the] contentions" and agreed with the PCR court's assessment of the claims.[8]

This Court agrees with the Appellate Division. Trial counsel's performance did not fall below and objective standard of reasonable professional assistance such that the outcome would

---

[8]State v. Jshik Jang, 2009 WL 2192580 (N.J. App. Div.).

13

have been otherwise different but for counsel's alleged errors. Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition will be denied.  The Court will issue an appropriate order and judgment.

      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:**   March 18, 2011

14